will reserve decision. We'll hear the next case. Tweed New Haven Airport versus Jefferson. May it please the court. My name is Hugh Manke. I'm with the law firm of Updike, Kelly & Spellacy. We are general counsel to the Tweed New Haven Airport Authority. With me today is Christopher Kleps and John King of the Updike law firm and John Rose who's representing the City of New Haven. The record in this case includes 37 stipulations of fact and 12 joint exhibits. The stipulations of facts were applied to the law, we think, in an incorrect way. We believe that a de novo review by this court is appropriate. The issue with the lower court is one that we feel the court has ignored our main argument with regards to standing. We are an Article 6 plaintiff. We are not in court on a 14th Amendment case. And yet the court spent a great deal of time discussing 14th Amendment cases. We are here with regards to public rights, not private rights. The public rights include the rights of the federal government to control what constitutes the boundaries of the airport and everything within those boundaries, as well as the navigable space, airspace, around the airport. The statute here targeted Tweed Airport. There's nothing facially neutral about this statute, like a lot of the statutes that the judge in the lower court seemed to really rely on. What is the status of the Memorandum of Understanding? Is it still in force? It has not yet been terminated by the City of New Haven, yes. Assuming hypothetically it's terminated, what happens then? It does not affect the validity of the state statute. What it does is it ends all the other obligations that were not fulfilled under the original agreement, all of which would have benefited the airport greatly, and none of them ever happened. Are you bound by the Memorandum of Understanding, or is the argument that it no longer controls? The argument is it no longer controls. Because? Because it has been breached by the state of Connecticut by the terms of the agreement, which required that at the time that the statute was adopted, limiting the length of the runway, that the state would appropriate. So you're saying it was never terminated, but it's no longer operative? Yes. Because of breaches? That's correct. When I read the record, I mean, there easily could have been something that I missed. I thought it odd that it had never been terminated, since both parties could simply, apparently, just send a letter to the other party terminating it. Right. And I think the reason for that is that we have a bigger issue, and the bigger issue is the one that's before us today, which is namely, what do we do about a state statute that is limiting the length of the runway and crippling the ability of the airport authority to bring an obsolete airport into the modern era? The problem at the trial level was that the judge actually treated the Tweed New Haven Airport Authority, which is in court on an Article VI case, as though we were a Loujain plaintiff, a Loujain plaintiff, one where there were private citizens claiming that an endangered- In Article VI, what are you referring to? The Supremacy Clause. So we had a terrible result at the local level, at the lower court level, I think mainly because the judge did not focus in on the fact that there's a significant distinction between Article VI cases and Fourteenth Amendment cases. And I think we absolutely had an injury, in fact, from the moment the statute was enacted, because at that point in time, as the Defendant's Exhibit A makes very clear, the federal government said you have- Was the statute enacted to implement the Memorandum of Understanding? It was enacted to implement one provision of the Memorandum of Agreement, yes. But you've just changed- the airport has changed its mind about the wisdom of having a runway limited in such a way. Well, it would not be correct to say that the airport authority felt comfortable with this Memorandum of Agreement. Politics solves some problems, and politics sometimes creates problems. And in this case, what we found was that the action taken by the General Assembly was in that the airport authority had made to the FAA. And this is something that we must remedy. And there are many challenges for us in getting through the process of getting a longer runway. But the one challenge that we cannot deal with on our own is the challenge before the court, and that is elimination of a statute that is targeting our airport and making it impossible for us. Could you talk about preemption? Because I thought that's at the heart of the problem here. Preemption. Yes, sir. Is somebody going to talk about it? Yes, we certainly will on rebuttal. Or if you can give me a minute right now, I'd be happy to. You can have some more time. Okay, thank you. The key question in a preemption case is what was the congressional intent? I think the congressional intent in the Federal Aviation Act, as well as the Airline Deregulation Act, and the third act, which we call the AAIA Act, is to give the federal government control over the activities within the boundaries of an airport so that they can create maximum safety and they can promote maximum competition in response to market forces. And then in the AAIA, to also assure that the things that are needed in order to expand the service at the national system and to make a very comprehensive commercial air service program, that the improvements that are needed in an airport will be constructed in the . . . legislation going to air safety. Runways are definitely a part of the navigable airspace based on case law, and certainly within this circuit, and we believe that the FAA Act is applicable in this case. Why? Why? Why? Because lengthening a runway is going to produce a safer runway, as well as expanding the service, at Tweed New Haven Airport. Okay, so what about the ADA? How does the length of the runway relate to price, route, or service? Well, the stipulated facts, I think, make it pretty clear that, at the moment, we only have service to Philadelphia, and the only way we can expand that service is to lengthen the runway. Why is that the FAA's point? Why can't the FAA say, okay, you know, it's not safe to do anything else, and therefore they perform their function? Couldn't they say, you know, we looked at this, and you can't have commercial . . . unless you are able to extend the runway, you cannot have commercial aviation here. It's not safe, period. Therefore, you don't have commercial aviation there. They could definitely say that at a moment's notice, and that's what we're worried about, and that's why we need to begin to expand. We need to begin our project to lengthen the runway, and it's going to take a long time to get that runway project complete, and the sooner we do it, the better off we're going to be because we're going to lose service. Go ahead. I was just going to say, but that's not about preemption. That's about why it's important to you, as a commercial matter, as a political matter, why it's important to you to lengthen the runway, but that's a matter between you and the state. How does that have to do with air safety? Well, the master plan that was adopted in 2002 calls for a lengthening of the runway, and the state statute that was adopted in 2009 absolutely makes that impossible. The master plan was blessed by the FAA? Yes, and by the State of Connecticut. And you've had discussions with the FAA about lengthening the runway? Yes, we have. We applied, actually. We've taken the very first step. And has the FAA said anything about the statute being an impediment? Yes, they did. In Joint Exhibit Number 8, the FAA administrator clearly said that you must do a number of different things, but most of all, you've got to get rid of that statute. What's your strongest preemption argument? You have three different statutes. I think probably the ADA. You have to say that all of you know the issues surrounding service and the definition of service. I would say that both price and service under the ADA, not price, I'm sorry, routes and service under the ADA are at issue here, because we cannot go to any place other than Philadelphia. The ADA talks about the service of an air carrier, not an airport. That's correct. And so what we're talking about is a route that is – American Airlines is our only carrier right now, and that carrier cannot go to any other location other than Philadelphia. Yeah, but they're not a party to this. No, they're not a party to the case, and I don't think they need to be a party to the case. The Arapaho case talks about the termination of service at an airport, and that is a case where an airport was the issue and an airline was not the principal issue. So it doesn't have to be an airline that's bringing this kind of case. We believe under the ADA where the idea is that we should have a broad, broad interpretation of the statute, that we are covered. You have some time for rebuttal, so let's hear from your colleague. Not yet. Yes, sorry. Mr. Rose. Good morning, Your Honor. The city owns this airport. The city leased this airport to the authority right after the state passed the legislation creating the authority. It's interesting to read the legislation creating the authority, especially in light of what happened in 2009, that is to say when first we have this marvelous piece of legislation that says go forth and do all of the things that you can do to make this a very successful attempt. And it's interesting that this is the very first authority in Connecticut, even before the Bradley Field Authority, which is a much more significant airport than the feeder airport, which New Haven has always been. Come, and I might want to address the MOA, but come the time when the legislation passed to restrict the runway to 5,600 feet. We've got this law that says do all of the things you're going to do to make it a successful airport. It becomes a completely unsuccessful airport when it cannot accommodate planes that the airlines, by the way, the entire airline industry has gone from many, many large companies to four. It's all driven by the dollar. You can't fly out of Tweed in a plane that is fully passenger and with all of the luggage that people want to fly because the runway is too short. Nobody is coming to this airport. This ought to be, in my opinion, this ought to be Westchester or White Plains north. Almost 3 million people live in the catchment area. They cannot use an airport that's right there that they could fly everywhere. I have absolutely no doubt about it, not being like some of my colleagues, not being from having gone to law school in New Haven. I don't know all about it, but okay. I personally accept the notion really that they should have a big area, catchment area, I like that, area, and they ought to. But the question is, why is this our business as a federal court of appeals to make sure that the better side wins unless you tell us how the federal law requires it? It seems to me that the federal law, that is to say the FAA Act, applies completely here. This is a case about the FAA and the airport. The state stuck its nose in and, with all due respect, flew in the face of the FAA Act and all of the federal legislation, and it's interesting to me to take this case and analogize it to this court's decision in the United States of America versus the city of New Haven at 447 Fed Second 972. It's almost like the state should have learned its lesson from that case. The Supreme Court of the state of Connecticut made a ruling having to do with what was then an ongoing war, literally, between East Haven and New Haven in a state statute. That statute specifically said, according to the court, that New Haven, having acquired property on the airport, where, as far as the court was concerned, only the FAA deals, the court said, oops, New Haven, you're going to get fined $1,000 a day for what you've done. But the court, relying on two Hempstead, New York cases, said the ordinance, the action by the state Supreme Court is just wrong. The federal government stood up and said, we control. It would have been lovely to have the FAA in this case because it would have been easy, it seems to me, for us to win the case then because, in fact, the federal law preempts the entire world here. I don't understand how the FAA, your argument that the FAA preempts this statute because the FAA, as I read it, it's interesting, at the moment, there's an issue of a tree on the end of the runway that the airlines are concerned about. The law is clear that runways are covered by the FAA, period. That's a safety issue. They can tell you how long your runway can be, how short it can be. The state has no business sticking its nose in that area. It's none of the state's business. This is a law that's directed at the entities that run the airport. Wouldn't the FAA say it's fine, this is a perfectly good airport, so long as it's not used for commercial air service? They could say that. We can't control that. But they can say that. The state doesn't get to say to the airport, well, we want you to be less than you are, so we're going to pass a statute that limits the length of your runway. They can't do that. Either you use your powers as a governmental entity and lengthen that runway or don't accept commercial. That's what we at the FAA are concerned about. We're concerned about safety. But can they require that, okay, for safety reasons, you either have to limit the amount of the kinds of aircraft or you have to lengthen the runway. But can they require you to make one choice or the other? Remember that the FAA acted on extending this runway in 2002. It took almost nine years to get that done. But the FAA and the state of Connecticut agreed in 2002 that the runway ought to be extended. It ought to be 7,000 feet. We're not even looking for that at this point. We're going up to something in the area of 6,100. Remind me, who owns the airport? New Haven owns the airport. Okay, thank you. We'll hear from the state. Thank you. May it please the Court. Your Honor, it's Drew Graham from the Connecticut Office of the Attorney General. I think I'd like to start. It seems like a good idea to lengthen the runway. I mean, why is the state resisting? Well, does it, Your Honor, in the sense of there's no factual evidence presented at trial that there's any commercial airline that is seeking to provide additional service or increase service to the airport. Very hard to believe that you can make that assertion. There's one airline that serves New Haven. That's correct, Your Honor. The reason is the length of the runway. Well, we don't know that, Your Honor. What we do know is that there's no evidence to show that there's any airline that has expressed an interest in committing service to the airport, even if the runway is lengthened. That's what we do know. That's what the evidence has shown, Your Honor. They failed to present evidence to the contrary. Would it matter? Yes, I think it would. I think it would matter. I think it would matter for standing purposes, Your Honor. I think if there was a massive demand, not a massive demand, but if there was a demand for increased service that was shown, I think it would fortify their injury in fact and fortify their argument for standing in this case, Your Honor. I was looking for a map of the airport. I'm sure it's somewhere in the record, but I thought the easy way to do it, and I know this is an outrageous thing to admit, but I thought the easy way to do it was to go on Wikipedia and look for AED, and I did, and it said something about service beginning later this month. Charlotte is what it said. Is that Wikipedia wrong again? Well, Your Honor. Yeah. That's what it says. I'm just asking whether there's anything in there. I'm sorry. I guess I lost you when you said Charlotte. What did you find when you looked? I'm asking whether what it said was beginning December 18th of this year, there will be service from the airport to Charlotte, and I'm simply asking you if that's wrong. Do you know? I don't know if that's wrong or right, Your Honor, but I would say that assuming that that article is true, I have no reason to doubt it, but I think it's helpful to our argument. Wikipedia is enough reason to doubt it. Well, I say that obviously I don't want to cite evidence outside of the record. I'm aware of development of additional services that have occurred at the airport. I don't want to cite them. It wouldn't surprise me if American Airlines has opened up a new route. Okay. And mandate the length of runways in any airport in the state. Well, that's called the legislature. Sorry? That's called the legislature. The legislature has effectively taken the role of a board in this case, Your Honor. That's basically what happened here. So could the legislature tell Bradley Airport that this 7,000-foot runway you have can't be used and you've got to only use your 5,500-foot runway? So it all depends on the context, Your Honor, and if the context is analogous to this case. That's a hypothetical question.  Go ahead. Well, what I mean to say, Your Honor, is if safety is involved at all, then absolutely not. If Bradley Airport needs a 65-foot, 200-foot runway or 7,000-foot runway, the state has no business going in there. What's the difference? Because safety is involved, Your Honor. That's why. Well, supposing there is a statute unanimously passed by the Connecticut State Legislature that says no airport in the state of Connecticut shall have a runway longer than 5,700 feet. And people say, gee, that's terrible. There goes Bradley Airport. We won't have an airport. You'd come here and say, well, but it's unsafe. No, it isn't unsafe. It means you're just not going to have any commercial air service in Connecticut. Can't the legislature decide there will be no commercial air service to Connecticut? They can't do it if it will affect safety at those existing airports. If it affects safety at the existing airports like at Bradley. They can't pass a law that says we now like Bradley to be 5,000 feet long. It would affect commercial safety, Your Honor. Not necessarily. The commercial airlines simply couldn't fly there anymore. It wouldn't be unsafe. It would be unused. That's correct. That's correct. Can a state do that? Can a state legislature enact a statute that effectively prevents an airport from being created? Yes, due to its land use power, due to its power over the regulation of land use in its own state, Your Honor. Could the state of Connecticut just simply ban airports from the state? The state of Connecticut could, as opposed to ban an airport, Your Honor? No airport. Because in this particular case, Tweed is a political subdivision of the state and it is a creature of statute, it could repeal the statute by effectively banning it. Could the state of Connecticut ban airports? I don't know that we're on the road to banning airports completely, Your Honor. I think that would be a violation of the Constitution on a different level, and that would be a violation of interstate travel. So I think that would be a constitutional violation. Could the state of Connecticut say no airport in Connecticut could have a runway more than 5,000 feet because we only want prop planes in Connecticut, we don't want jets. Could it do that? Again, I think that starts to implicate interstate travel, Your Honor, on another level. But my position is that as long as that doesn't affect the safety of that airport. But doesn't what's happening in New Haven interfere with interstate commerce, interstate flights? Just, I mean, the same way. No, it doesn't, Your Honor. It doesn't, Your Honor, and here's why. New Haven, again, the authority just wants the airport to get bigger without any evidence that there's any demand for increased service at this time. But if there were evidence, your argument would be different. I think it would give a stronger argument for standing, Your Honor, yes. I think that that. You're talking about standing. That's right. I think that would affect the standing argument, Your Honor. I think it would affect it. I think it would make the, I think it would. Go ahead, Your Honor. Does it affect preemption? So with respect to preemption, Your Honor, regarding the FAA Act, the FAA Act occupies the field of aviation safety. And the reason this case is different is because in this particular instance, this statute doesn't affect aviation safety on this runway at that airport. The parties have stipulated that there are no current or pending FAA safety enforcement actions or any violations of federal safety regulations right now that are in existence at that airport. In the abstract, doesn't the length of a runway impact safety? Yes, it does. Why? In the abstract, but not in this case, Your Honor. What more do you need? Sorry, Your Honor? Given that concession, that means, it seems to me, that the statute applies. In this particular case, Your Honor, as a general rule, runway can affect the amount of weight and passenger capacity they can put on an airplane. We stipulate that fact. That's an obvious fact. But that is a fact that can affect safety on a runway depending on what planes fly there and service that airport. In this particular case, the planes that service this airport safely service the airport. Again, there's no safety issue at the airport. This runway is safe for the current planes that fly there. This runway is safe for the replacement jets that can fly there as well. And so there are no safety concerns on this runway at this airport. And so unlike the case 10 years ago when the runway safety areas were improved, that was all done for the purpose of improving safety at the airport. Could the State of Connecticut pass a law that says no airport in the state can have a runway over 5,000 feet? Again, I think that would implicate a matter that we really haven't gone into a lot in interstate travel, Your Honor. Could the State of Connecticut pass a law saying no airport in New Haven County can have a runway over 5,000 feet? They've done that. That's effectively what they've done here. So the answer to that is yes, they've done that with this airport, Your Honor, by restricting it to 5,600 feet. I think that's what we have here. It's okay to do it for New Haven County, but they can't do it for any county north of Hartford, maybe? I mean, how – No, I think they can – I think theoretically it can be done, but because Bradley has service that requires a runway that's longer than 5,000 feet, then I don't think that would be allowed. I think that the fact that the difference is – like I said, the difference here is that if you restricted Bradley to 5,000 feet, in light of the fact that Bradley has hundreds of planes that need 6,500 feet, you are now infringing on the safety of Bradley Airport, and therefore you have violated the FAA Act. That position does not apply to Tweed because Tweed doesn't have any planes that need a runway that's longer than 5,600 feet. Of course, Your Honor, of course they can't do that. You can't land there. Again, the evidence doesn't show that, Your Honor, respectfully. The evidence does not show that any airline has offered or provided any commitment to do so. You're saying that would matter if they could show that. I think that would matter. I think that would matter. I think that would strengthen their case for standing. Why would it matter? Well, I think it would strengthen their case for standing because part of their standing – At the moment, we're trying to focus on preemption. Again, because I think it would draw in safety concerns. If Tweed comes in and says, look, we have several airlines, including American or other airlines, that have different jets that require 6,500 feet instead of 5,600 feet, and they can't land here, and they are willing to provide an express commitment to come here and we need a longer runway, then the length of the runway would obviously impact the safety concerns about those planes at that time. The problem is, Your Honor, we just don't have the evidence at this particular moment in this case. So you've given them kind of a roadmap to how to lengthen the runway, get somebody who says they'll use it. Oh, I think they're well aware of their own bet, Your Honor. Having dealt with opposing counsel for a while, they know exactly what to do to strengthen the case, and I wish them luck, but at this point, they just simply don't have that demand to justify it. Wouldn't a robust airport be a big economic boom for this area? It certainly could be. It certainly could be, Your Honor. There's no potential for it at the moment. I'm sorry. I'm sorry, Your Honor. Go ahead. We can take some sort of judicial notice about what we read in the New York Times, but Connecticut is rumored to have budget problems. It certainly could be, Your Honor. Again, there's no evidence of it at the moment. If I may, am I over my time, Your Honor? That means you're over, but go ahead and finish up. Okay, Your Honor. I just want to make a very quick point in response to what was said earlier. There was an opposing counsel, I believe said that the runway project will produce a safer runway, and I don't agree with that. Again, the runway is safe right now as it is for the planes it has to service at this moment. Only if they are not full. They have to limit the number of passengers. They can't fly with a full flight. They have to limit the amount of luggage, and only then is it safe for the existing service. Isn't that so? Doesn't the record indicate that? I think that indicated, Your Honor, with the Dash 8 as opposed to the replacement jets. Well, the planes that – your point was it's safe right now, and all I'm suggesting is it's safe because they can't fill up the plane. They don't fill up the plane. No, I think for the Dash 8. If they were to fill up the plane, it apparently won't be safe. I think the record reflects that as far as the replacement jet goes, Your Honor, they can fill up the plane and it satisfies the runway length, satisfies the minimum length needed for the replacement jets, Your Honor. All right, thank you. Thank you, Your Honor. We'll hear the rebuttal. Is there anything in the record that suggests that there are other airlines that would come if the runway were lengthened? Yes. Yes, there is in the record, Your Honor. Allegiant Airlines has sent a letter to the FAA and said that they will come if the runway is lengthened. And it was an extraordinary event. That's in the record. That's in the record, yes. It is A465. Okay. I'm just wondering whether New Haven can't do without Allegiant Airlines. Well, we have the largest catchment area in the country that is not servicing Orlando right now, Your Honor, and so Allegiant is anxious to come into our airport. And I should point out that we are part of a national system. We may not be a hub. We are a feeder. But we're an essential part of the national system. And the FAA ---- Not an essential part if all you've got is four half-filled planes going to Philadelphia every day. That's true. But if you eliminate that service, then it affects service in Philadelphia and places beyond Philadelphia. Nobody's talking about eliminating it. Well, the record is very clear that if we do not lengthen the runway, we are not going to have commercial service in the future. That's in the record, and it's stipulated facts. And we also had a testimony of an expert who testified on cross-examination, and the evidence there was uncontroverted, that Tweed must lengthen the runway in order to continue to be part of the national system. We are subsidizing ---- The state is subsidizing Tweed every year to the tune of at least $1.5 million. And that's because the service levels are such that we are not a self-sustaining airport, which is a violation of one of our grant assurances and causes us additional problems with the FAA. They want us to implement the master plan, which calls for lengthening the runway, so that we can expand service, generate more revenue, and meet the self-sufficiency requirements of the grant insurance. The point is that the federal government has invested $40 million in this airport. Just on that point you were making, you need more business. You're not self-sustaining. You need to ---- That's correct. Now, does that relate to safety, or does that fall under some other statute for purposes of the preemption analysis? Safety and service are interrelated. We cannot right now run airplanes out of Tweed fully loaded in an efficient way, so therefore revenue is hampered every time we have a ---- I would think your argument is better that you can't do it in a safe way, which is why you limit it for safety reasons, not for efficiency reasons. Isn't that right? Yes. Oh, we must. Absolutely. We must offload passengers on occasion, and that's what we're doing right now, in order to assure safety. And the reason is ---- That's right. And on the safety issue, we certainly feel the FAA Act is applicable here on preemption because runways are very clearly a part of the navigable airspace. And you have two cases in this circuit that clearly specify that. And so while we think the ADA is applicable and the AIA may be applicable, the FAA certainly also is applicable. I'll let you finish up. Yes, thank you. I would just like to add that Judge Hall, in her decision with regards to Tweed, made a very interesting point, which was that she felt that the ADA was not applicable because there was nothing in the runway safety area project that was at issue in that case that would prevent larger aircraft from coming into the airport. In other words, she was saying if larger aircraft are prohibited for some reason by some state or local action from coming into the airport, that would be implicating the ADA. All right. Thanks very much. Thank you. We will reserve decision. The remaining cases are on submission. I'll ask the clerk to adjourn. Thank you. Thank you.